814 A.2d 1094

DENNIS CULBERT, PETITIONER–APPELLANT, v. CITY OF JERSEY CITY, RESPONDENT–RESPONDENT.

Argued September 23, 2002—Decided February 11, 2003.

See also, *Lindquist v. City of Jersey City Fire Dep't,* 175 N.J. 244, 814 A.2d 1069.

*James Koblin* argued the cause for appellant (*Horn Shechtman*, attorneys).

*John H. Geaney* argued the cause for respondent (*Capehart & Scatchard*, attorneys).

*Craig S. Gumpel* submitted a brief on behalf of *amicus curiae* New Jersey State Firemen's Mutual Benevolent Association (*Fox and Fox*, attorneys; *Mr. Gumpel* and *Jennifer E. Walker*, of counsel and on the brief).

*Alan R. Levy* submitted a brief on behalf of *amici curiae* New Jersey State Council of Machinists, International Association of Machinists and Aerospace Workers, AFL–CIO, and New Jersey Advisory Council on Safety and Health (*Ball Livingston*, attorneys; *Mr. Levy* and *Craig H. Livingston*, on the brief).

The opinion of the Court was delivered by

COLEMAN, J.

The issue raised in this workers' compensation case is whether petitioner's employment as a fireman for more than thirty years caused or contributed to his development of pulmonary emphysema within the meaning of the occupational disease provisions of the Workers' Compensation Act, *N.J.S.A.* 34:15–31. The Judge of

Compensation found that petitioner's occupational exposure materially contributed to the development of emphysema. The Appellate Division reversed, finding petitioner's proofs on medical causation to be insufficient to establish the required nexus with his employment. We disagree and reverse for the reasons expressed in the companion case of *Lindquist v. City of Jersey City Fire Dep't*, 175 *N.J.* 244, 814 *A.*2d 1069 (2003), which is decided today.

## I.

On January 8, 1993, petitioner, Dennis Culbert, filed a claim petition against his employer, City of Jersey City Fire Department, alleging that he had sustained pulmonary disability as a result of his occupational exposure while working as a firefighter since 1968. When the matter was heard in the Division of Workers' Compensation between December 10, 1997, and May 10, 2000, petitioner was still employed by respondent as a firefighter. Petitioner was fifty-three years old when he testified in 1997, and had smoked one-half pack of cigarettes daily for twenty-eight years between 1964 and 1992.

As a firefighter, petitioner responded to structural, rubbish, car and warehouse fires. He was responsible for "rescue" that required him to enter burning buildings to turn off electricity and gas. He also was responsible for ventilating the structure and performing a search and rescue of the various floors of the burning building. While performing his duties as a firefighter, petitioner was exposed to many pulmonary irritants, including smoke, plastics, wood, household and industrial chemicals, chlorine, gases, rubber tires, dust and diesel fuel from idling fire trucks. The combustion of rubber tires, chlorine, and plastics as well as household and industrial chemicals emitted toxic fumes and smoke. Although petitioner was provided some protective gear, he frequently did not wear it because it was too cumbersome or ineffective and interfered with execution of his duties. Petitioner would spend on average thirty to forty-five minutes fighting structural fires and five to ten minutes suppressing car fires.

Although petitioner was never hospitalized for smoke inhalation, he was given oxygen at the scene of a fire from time to time. He sought treatment from his family physician in 1995 for breathing problems and a productive cough. The breathing problem makes it difficult to climb stairs and to swim. He no longer mows his lawn due to shortness of breath.

Dr. Henry Velez, Board Certified in internal and pulmonary medicine, testified for petitioner. He examined petitioner on October 16, 1992 and on October 21, 1996. At the time of the first examination, petitioner complained of having a cough for several years and occasional wheezing. Those complaints were unchanged at the time of the second examination. An x-ray taken at the time of each examination showed moderate bronchovascular markings consistent with long-term exposure as a firefighter and as a cigarette smoker. Pulmonary function studies performed on both occasions revealed "obstructive airways disease." Dr. Velez diagnosed petitioner's pulmonary condition as chronic bronchitis, which is "a productive cough lasting two or three months per year for two successive years," and peribronchial fibrosis, which is an "[o]bstruction of the airways of the lungs." He concluded that the obstructive pulmonary disease was caused by both the occupational exposure and by smoking cigarettes. His conclusion was based on his professional training and experience from examining many firefighters as well as his review of unidentified journals and articles. He estimated petitioner's pulmonary condition at thirty-five percent of permanent partial disability. Although he could not apportion that disability between job-related exposure and smoking, he stated that the job-related exposure materially contributed to the disease process.

In response to Dr. Velez's testimony, respondent presented testimony by Dr. Douglas Hutt. He is Board Certified in internal, pulmonary, and critical care medicine. Dr. Hutt examined petitioner on June 12, 1996. A chest x-ray taken at that time was interpreted as revealing a slight abnormality. Pulmonary function studies revealed a "mild reduction in [petitioner's] FEV1 and his

FVC," a result that "may be indicative or consistent with obesity without any air flow obstruction." When all of petitioner's "exposure flow rates" improved after he used a bronchodilator, Dr. Hutt concluded that petitioner has "some mild degree of air flow obstruction," and that within a reasonable degree of medical probability petitioner has "early development of emphysema" caused by cigarette smoking. He buttressed his medical causation opinion on the fact that "there's data that show that somewhere between 85 and 95 or so percent of patients that have emphysema, have it from smoking." He never identified what data or studies he used to support his opinion.

Cross-examination of Dr. Hutt was conducted approximately eighteen months after his direct examination. When asked, on cross-examination, whether in addition to smoking cigarettes petitioner's work as a firefighter could be a material cause of his lung disease, Dr. Hutt stated: "It's certainly possible. Certain studies have shown there's airflow obstruction that could occur with firefighters. Several other studies have shown that it doesn't seem to happen." Again, the studies were not identified except to refer to the American Thoracic Society. Finally, Dr. Hutt admitted that firefighters' work exposure can exacerbate their lung problems, and that he has "many cases of firefighters that [he] treat[s] as patients that have significant lung injury from their exposures, but that doesn't indicate that all firefighters have injury and or the bulk of them" have injury. On redirect, though, Dr. Hutt stated that he was unaware of any study linking non-smoking firefighters with emphysema.

The Judge of Compensation concluded that petitioner's occupational exposure as a firefighter for more than thirty years materially contributed to the development of his chronic obstructive pulmonary disease that causes "an appreciable impairment of petitioner's ability to carry on the ordinary pursuits of his life." Accordingly, the judge awarded petitioner a permanent partial disability of twenty-five percent.

The judge rejected Dr. Hutt's assertion that, although petitioner has a pulmonary disability, it is attributable in part to petitioner's excessive weight. The judge reasoned that the spirometric tests performed on petitioner measured his lung capacity, and the standard used to determine whether the results were normal does not consider weight as a factor. Additionally, in rejecting Dr. Hutt's opinion that petitioner's pulmonary condition was caused exclusively by smoking cigarettes, the judge found persuasive the fact that Dr. Hutt admitted during cross-examination that "there are studies that conclude that there is an increased risk of lung obstruction related to exposures to diesel exhaust [and that] there are studies that have shown air flow obstruction resulting from firefighters' occupational exposures." In explaining why the claims should not be rejected because there were dual causes, one personal (here, smoking cigarettes), and the other based on occupational exposure, the judge stated:

> [Petitioner] smoked for a period of 28 years at the rate of ½ pack per day. He last smoked in 1992 at the age of 48. Although I find that such a prolonged smoking history is significant and contributory to his pulmonary disability, I by no means conclude that it is an exclusive cause. All that petitioner needs to establish to satisfy the definition is that the occupational exposures contributed to a diagnosed pulmonary disability by an appreciable degree. I am most satisfied that petitioner's work environment over a period of 30+ years exposed him to hazardous and toxic materials that are known to cause lung disease. I am further persuaded by his history of medical attention at fire scenes.

In an unpublished opinion, the Appellate Division reversed, concluding that petitioner's proofs on causation were insufficient. Relying on *Fiore v. Consolidated Freightways,* 140 *N.J.* 452, 472–73, 659 *A.*2d 436 (1995), the panel found that "[p]etitioner has not presented evidence that his work exposure to smoke exceeds the exposure caused by his cigarette smoking.... Petitioner failed to establish that his exposure to his work environment was such that without that exposure, his pulmonary disease would not have developed." Finally, the panel rejected petitioner's reliance on the firefighters' presumption, *N.J.S.A.* 34:15–43.2, concluding that the presumption should be restricted to volunteer firefighters.

We granted petitioner's petition for certification. 171 *N.J.* 444, 794 *A.*2d 183 (2002).

## II.

Petitioner argues that the Appellate Division mistakenly applied *Fiore* to this pulmonary case and that *Fiore* should be restricted to cardiovascular and cerebrovascular occupational cases. Petitioner maintains that when the correct legal standard is applied to this occupational pulmonary case, there is sufficient credible evidence in the record to support the Judge of Compensation's decision. The New Jersey State Firemen's Mutual Benevolent Association and the New Jersey State Council of Machinists, International Association of Machinists and Aerospace Workers, AFL–CIO and New Jersey Advisory Council of Safety and Health have filed *amici curiae* briefs supporting petitioner's legal contentions.

We agree with petitioner and reverse the judgment of the Appellate Division for the reasons stated in *Lindquist v. City of Jersey City Fire Dep't, supra.* We add that had the Appellate Division not misapplied *Fiore* and instead applied the appropriate standard of appellate review, the concessions made by Dr. Hutt during cross-examination would have compelled an affirmance of the Judge of Compensation.

## III.

The judgment of the Appellate Division is reversed and the judgment of the Division of Workers' Compensation is reinstated.

*For reversal and reinstatement*—Chief Justice PORITZ and Justices COLEMAN, LONG, VERNIERO, LaVECCHIA, ZAZZALI and ALBIN—7.

*Opposed*—None.